UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CHRISTOPHER BOOTHBY,

           Plaintiff,

                                                              15 Civ. 4604 (RMB)

    vs.                                                  **SECOND AMENDED**
                                                              **COMPLAINT**

THE CITY OF NEW YORK,
S.O.D. WARDEN LINDA GRIFFIN,
JOHN/JANE DOE S.O.D. DEPUTY WARDEN,
S.O.D. ASSISTANT DEPUTY WARDEN
DANIEL TAYLOR, S.O.D. CHIEF BRIAN SUPRENANT,
JOHN/JANE DOE S.O.D. ASSISTANT CHIEF,
DOC CAPTAIN PETER CONQUET (shield #1206),
DOC OFFICER BOB VILLETTE (shield #16054);
DOC OFFICER EDWIN MORA (shield #18124),

           Defendants.
------------------------------------------------------------------X

## PRELIMINARY STATEMENT

1.     This is a civil rights action brought by plaintiff Christopher Boothby, for damages pursuant to 42 U.S.C. §1983 and New York State law. On March 13, 2014, while inside the Riker's Island Central Visit Area, Mr. Boothby was brutally beaten and arrested without justification by defendants in violation of his rights under the Fourth Amendment to the United States Constitution. This assault seriously injured Mr. Boothby, causing him to sustain physical injuries to his head, mouth, neck, back, elbow, hand, and hip, and emotional injuries.

2.     The City of New York and the New York City Department of Correction ("DOC" or "the Department") are, or should be, aware that its staff members persistently use brutal force and cause serious injury. The incident involving Mr. Boothby is part of a pattern of incidents where persons have alleged assaults and excessive force committed by DOC staff for which they suffered serious injuries.

1

3.   The DOC staff that assaulted and used excessive force against Mr. Boothby then falsely accused and arrested him for criminal offenses he did not commit.

4.   Mr. Boothby now seeks redress against the DOC employees who assaulted, falsely accused and arrested him, their supervisors, and the City of New York.

## JURISDICTION AND VENUE

5.   This action arises under the Fourth Amendment to the United States Constitution and under 42 U.S.C. §§ 1983.

6.   The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3)-(4) and 1367(a).

7.   The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

8.   Mr. Boothby demands trial by jury in this action.

## PARTIES

9.   Christopher Boothby is a citizen of the United States and resided in Brooklyn, New York at the time when these events occurred.

10.   Defendant City of New York ("City") is a municipal corporation which, through its Department of Corrections ("DOC"), operates a number of detention facilities. The DOC, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies, including those with respect to the use, reporting and investigation of force by uniformed staff and inmates, access to medical and other program services mandated by local law and court orders. In addition, senior officials and supervisors in the DOC are aware of and tolerate certain practices by subordinate employees in the jails and fail

to discipline employees for behavior that is inconsistent with formal policy which in turn ratifies and encourages the continuation of such practices. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten DOC policies or customs. The DOC is also responsible for the appointment, training, supervision, discipline and conduct of all DOC personnel, including the defendants referenced herein.

11. At all times relevant hereto, S.O.D. Warden Linda Griffin was the Warden of the Special Operations Division on Rikers Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. On information and belief, defendant S.O.D. Warden Linda Griffin was responsible for supervising correction officers, captains, and other staff with respect to the operations at the Riker's Island Central Visit area. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. Defendant S.O.D. Warden Linda Griffin is sued in her individual capacity.

12. At all times relevant hereto, S.O.D. Assistant Deputy Warden (ADW) Daniel Taylor was the Assistant Deputy Warden of the Special Operations Division on Rikers Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant S.O.D. ADW Daniel Taylor was responsible for supervising correction officers, captains, and other staff with respect to the operations at the Riker's Island Central Visit area. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures,

directives and protocols. Defendant S.O.D. ADW Daniel Taylor is sued in his individual capacity.

13. At all times relevant hereto, "John/Jane Doe S.O.D. Deputy Warden" was the Deputy Warden of the Special Operations Division on Riker's Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his/her employment as such, and acting under color of state law. On information and belief, defendant "John/Jane Doe S.O.D. Deputy Warden," as the Deputy Warden of the Special Operations Division, was responsible for supervising correction officers, captains, and other staff with respect to the operations at the Riker's Island Central Visit area. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. Defendant "John/Jane Doe S.O.D. Deputy Warden" is sued in his/her individual capacity.

14. At all times relevant hereto, S.O.D. Chief Brian Suprenant was the Chief of Special Operations on Riker's Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his/her employment as such, and acting under color of state law. On information and belief, defendant S.O.D. Chief Brian Suprenant, as the Chief of Special Operations, was responsible for supervising correction officers, captains, and other staff with respect to the operations at the Riker's Island Central Visit area. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. Defendant S.O.D. Chief Brian Suprenant is sued in his individual capacity.

15. At all times relevant hereto, "John/Jane Doe Assistant Chief of S.O.D." was the Assistant Chief of Special Operations at the Riker's Island, acting in the capacity of agent,

servant, and employee of defendant City, within the scope of his/her employment as such, and acting under color of state law. On information and belief, defendant "John/Jane Doe Assistant Chief of S.O.D.," as the Assistant Chief of Special Operations, was responsible for supervising correction officers, captains, and other staff with respect to the operations at the Riker's Island Central Visit area. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. Defendant "John/Jane Doe Assistant Chief of S.O.D." is sued in his/her individual capacity.

16. At all times relevant hereto, John/Jane Doe S.O.D. Deputy Warden and John/Jane Doe Assistant Chief of S.O.D., whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John/Jane Doe," were acting in the capacity of supervisor, agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law.

17. DOC Captain Peter Conquet was a Captain at the Riker's Island Central Visit area, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Conquet, as a Captain at the S.O.D. Visitors Center, was responsible for supervising correction officers and other staff with respect to the operations at the Riker's Island Central Visit area. These responsibilities were required to be carried out in a manner consistent with the legal mandates that govern the operation of the DOC facilities, including Department policies, procedures, directives and protocols. In addition to the above, Defendant DOC Captain Peter

Conquet authorized Mr. Boothby's false arrest. Defendant Conquet is sued in his individual capacity.

18. Defendants S.O.D. Warden Linda Griffin, S.O.D. ADW Daniel Taylor, John/Jane Doe S.O.D. Deputy Warden, S.O.D. Chief Brian Suprenant, Assistant Chief of S.O.D., and Captain Peter Conquet are collectively referred to as the "Supervisory DOC Defendants."

19. On information and belief, the Supervisory DOC Defendants were supervising officers of the Special Operations Division and responsible for defendants Villette and Mora who were assigned to the Riker's Island Central Visit area at the time of the March 13, 2014 incident. The Supervisory DOC Defendants are sued in their individual capacity.

20. At all times relevant hereto, DOC Officer Bob Villette was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Villette worked at the Riker's Island Central Visitor area at the time of the March 13, 2014 incident alleged herein and participated in the beating of Mr. Boothby and falsely arrested him. Defendant Villette is sued in his individual capacity.

21. At all times relevant hereto, DOC Officer Edwin Mora was a correction officer within the DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. On information and belief, defendant Mora worked at the Riker's Island Central Visitor area at the time of the March 13, 2014 incident alleged herein and participated in the beating of Mr. Boothby and falsely arrested him. Defendant Mora is sued in his individual capacity.

22. Defendants Villette and Mora are collectively referred to as the "Individual Correction Officer Defendants."

## STATEMENT OF FACTS

### New York City's Jails: A History of Abuse

23.     For decades, through Department reports and civil litigation, DOC has been aware of the routine, dangerous and unconstitutional use of excessive force by staff at individual facilities in the large, multi-jail New York City Department of Correction.[1]

24.     For example, *Sheppard v. Phoenix*, 210 F. Supp. 2d 250 (S.D.N.Y. 1998) (terminating injunction), was a class action that concerned the City's Central Punitive Segregation Unit (CPSU). That litigation unearthed DOC staff members abusing other people and covering-up said abuse sufficiently serious to merit criminal prosecutions of DOC staff members.

25.     *Ingles v. Toro*, 428 F. Supp. 2d 203 (S.D.N.Y. 2006) (approving stipulation of settlement), was a system-wide class action challenging the widespread practice of using excessive force in New York City's jails. This litigation revealed significant numbers of credible excessive force complaints from those who had been seriously injured by staff in the City jails. The settlement of this class action was intended to provide meaningful improvements in the training, practice and supervision of agency staff and investigators, and changes in the Department's use of force policy.

26.     However, despite those prior class actions and settlements, the system-wide culture of violence continued in New York City jails. In 2011, another class action *Nunez v. City of New York,* 11 Civ. 05845 (SDNY)(LTS)(JCF) was filed alleging a pattern and practice of unnecessary and excessive force inflicted upon inmates of New York City jails by Department of

---

[1] *See, e.g. Fisher v. Koehler*, 692 F. Supp. 1519 (S.D.N.Y. 1988), *injunction entered*, 718 F. Supp. 1111 (1989), *aff'd*, 902 F.2d 2 (2d Cir. 1990) (Correction Institution for Men); *Jackson v. Montemagno*, 85 Civ. 2384 (AS) (E.D.N.Y.) (Brooklyn House of Detention); *Reynolds v. Ward*, 81 Civ. 101 (PNL) (S.D.N.Y.) (Bellevue Prison Psychiatric Ward); *Sheppard v. Phoenix*, 91 Civ. 4148 (RPP) (S.D.N.Y.) (Central Punitive Segregation Unit).

Correction uniformed staff. *Nunez* also alleged that supervisors in the jails and at the highest levels of the Department created and perpetuated a policy of permitting uniformed staff to use unlawful excessive force with impunity. According to the complaint in *Nunez*, despite having full knowledge of the practice of unconstitutional use of excessive force and the scores of serious injuries prisoners suffered as a result of such practice — such as broken bones, perforated eardrums, and spinal injuries— supervisors failed to curb such abuses and even encouraged it.

27.   In August 2014, after conducting a two and a half year investigation into the abuses at Riker's Island, Attorney General Eric Holder and Assistant U.S. Attorney for the Southern District Preet Bharara issued a scathing report and press release stating, "Riker's Island is a broken institution. It is a place where brute force is the first impulse rather than the last resort; where verbal insults are repaid with physical injuries; where beatings are routine while accountability is rare." http://www.justice.gov/usao-sdny/pr/manhattan-us-attorney-finds-pattern-and-practice-excessive-force-and-violence-nyc-jails

28.   In December 2014, the United States Department of Justice joined the *Nunez* plaintiffs in their lawsuit against the City after it failed to implement in a timely fashion reforms recommended by the Justice Department in its August report. *See* http://www.justice.gov/usao-sdny/pr/department-justice-takes-legal-action-address-pattern-and-practice-excessive-force-and.

29.   In June 2015, the City and the Department entered into a settlement with the *Nunez* plaintiffs and the Justice Department, which Assistant U.S. Attorney Preet Bharara touted as a "comprehensive framework requir[ing] the city to implement sweeping operational changes to *fix a broken system and dismantle a decades-long culture of violence*." *See* http://www.nytimes.com/2015/06/23/nyregion/new-york-city-settles-suit-over-abuses-at-rikers-island.html (emphasis added).

30. Additionally, through DOC's elaborate reporting system, the Supervisory DOC Defendants were aware of the pattern of a large number of incidents involving the use of unnecessary and/or excessive force resulting in serious injuries and have failed to take sufficient steps to curb these abuses.

31. The Department and the Supervisory DOC Defendants have also been made aware of the failure of the Department to bring disciplinary charges against its officers to promote institutional reform, punish staff that misuse force, and discourage others from doing so.

**32.** Through all these cases and Department reports, the Supervisory DOC Defendants have been made aware of the widespread practice by DOC staff of using excessive and/or unnecessary force to injure, and not restrain, people. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct, a practice that causes further abuse. These Supervisory DOC Defendants cannot credibly contend that they are unaware of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

**The Assault of Christopher Boothby**

33. On March 13, 2014 at approximately 2:30 p.m., Christopher Boothby and a friend arrived at the Riker's Island Central Visit area at 1 Halleck Street, Bronx County, to see another friend who was incarcerated on Riker's Island.

34. While waiting on line to enter the facility, Mr. Boothby heard defendant Villette verbally abusing a female visitor. Offended by the manner in which defendant Villette treated the female visitor, Mr. Boothby commented to his friend about the officer's abusive behavior. Having apparently heard Mr. Boothby's remarks, defendants Villette and Mora approached Mr. Boothby and told him to step off the line. Mr. Boothby protested and told the officers he had

done nothing wrong. Defendants Villette and Mora insisted that Mr. Boothby step off the line and began physically escorting him toward the exit. Mr. Boothby complied but continued to verbally complain about his treatment. Without any warning or justification, defendant Villette punched Mr. Boothby in the head causing him to fall to the ground. During the fall, Mr. Boothby's right elbow hit the ground with such force that his elbow split open and began gushing blood. Instead of giving Mr. Boothby medical attention, defendants Villette and Mora handcuffed Mr. Boothby, placed him in a cell, and falsely accused him of attempting to punch defendant Villette.

35. Defendants Villette and Mora falsely arrested Mr. Boothby and charged him with attempted assault, obstructing governmental administration, menacing and harassment.

36. Defendant Captain Peter Conquet authorized Mr. Boothby's false arrest despite knowing that Mr. Boothby did not commit a crime and was instead a victim of being attacked unjustifiably by defendants Villette and Mora.

37. Defendant Villette had a history of committing unreasonable and excessive force against inmates and visitors. Through several lawsuits and use of force incidents that were reported to the Department, the City and Supervisory Defendants knew or should have known that defendant Villette consistently violated the constitutional rights of prisoners and visitors but did nothing to discipline, train or curb such conduct. Instead, upon information and belief, defendant Villette was promoted to a highly sought after position as an E.S.U. officer, rewarding and ratifying his unreasonable use of force.

38. Hours after his arrest, Mr. Boothby was brought to Elmhurst Hospital where he was treated in the emergency department for his injuries. He was later taken to the 41st Precinct,

Bronx Central Booking, Bronx Criminal Court, arraigned and released on the evening of March 14, 2014.

39.     After over a year of appearing in court on false criminal charges, on June 5, 2015, Mr. Boothby agreed to have his case dismissed and sealed after six months. All charges were dismissed and sealed on or about December 5, 2015.

40.     Mr. Boothby continues to suffer physical and emotional injuries sustained during the incident.

41.     Mr. Boothby timely filed a written notice of claim with the Comptroller's Office at 1 Centre Street, New York, New York.

42.     This action has been commenced within one year and 90 days after the events upon which the claims are based.

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourth Amendment

43.     Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

44.     The Individual Correction Officer Defendants and Captain Conquet who were acting in concert and within the scope of their authority, arrested and caused plaintiff to be imprisoned without probable cause in violation of plaintiff's right to be free from an unreasonable seizure under the Fourth Amendment to the Constitution of the United States to be free of a deprivation of liberty under the Fourth Amendment to the Constitution of the United States.

45.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourth Amendment/Monell
### (Against Defendant City, Supervisory Defendants, and Individual Correction Officer Defendants)

46. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

47. By reason of the foregoing, and by assaulting, battering, and using gratuitous, excessive, brutal, sadistic, and unconscionable force, or failing to prevent other Individual Correction Officer Defendants from doing so, defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment of the United States Constitution to be free from gratuitous and excessive force.

48. The Supervisory DOC Defendants and Individual Correction Officer Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by these defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and the Fourth Amendment of the United States Constitution.

49. Defendant City, through DOC, and the Supervisory DOC Defendants, acting under the pretense and color of law, permitted, tolerated and were deliberately indifferent to a pattern and practice of staff brutality and retaliation by DOC staff at the time of plaintiff's beating. This widespread tolerance of correction officer abuse constituted a municipal policy, practice or custom and led to plaintiff's assault.

50. The Supervisory Defendants knew and/or should have known that the pattern of physical abuse described above existed at the City jails prior to and including the time of the assault on plaintiff. Their failure to take measures to curb this pattern of brutality constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's beating, and the failure of these defendants to take remedial action despite the fact that the misuse of force at City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of persons on their premises, including the plaintiff in this action. These defendants' conduct has been a substantial factor in the continuation of such violence and a proximate cause of the constitutional violations alleged in this complaint.

51. By permitting, tolerating and sanctioning a persistent and widespread policy, practice and custom pursuant to which plaintiff was subjected to a brutal beating, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourth Amendment to be free from gratuitous and excessive force.

52. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### SECOND CLAIM FOR RELIEF
**Assault and Battery**
**(Against Defendant City and Individual Correction Officer Defendants)**

53. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

54. In assaulting, battering, and threatening plaintiff, or standing by and failing to intervene when plaintiff was assaulted, the Individual Correction Officer Defendants, acting in

their capacities as DOC officers, and within the scope of their employment, each committed a willful, unlawful, unwarranted, and intentional assault and battery upon plaintiff.

55. The assault and battery by these Defendants was unnecessary and unwarranted in the performance of their duties as DOC officers and constituted an unreasonable and excessive use of force.

56. Defendants, their officers, agents, servants, and employees were responsible for Plaintiff's assault and battery.

57. Defendant City, as employer of each of the Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

58. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

### THIRD CLAIM FOR RELIEF
### Negligent hiring/training/retention of Employment Services
### (Against Defendant City and Supervisory Defendants)

59. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

60. Defendant City, through the DOC, and the Supervisory DOC Defendants owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances, a reasonable, prudent and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

61. Upon information and belief, all of the Individual Correction Officer Defendants were unfit and incompetent for their positions.

62. Upon information and belief, defendant City and the Supervisory DOC Defendants knew or should have known through the exercise of reasonable diligence that the Individual Correction Officer Defendants were potentially dangerous.

63. Upon information and belief, defendant City's negligence and the negligence of the Supervisory DOC Defendants in screening, hiring, training, disciplining, and retaining these defendants proximately caused each of plaintiff's injuries.

64. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

**FOURTH CAUSE OF ACTION**
**False Arrest**
**(Against Defendants City, Supervisory DOC Defendants,**
**and Individual Correction Officer Defendants)**

65. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

66. The acts and conduct of Defendants constitute false arrest and false imprisonment under the laws of the State of New York. Defendants intended to confine plaintiff and, in fact, confined plaintiff, and plaintiff was conscious of the confinement.

67. There was no probable cause for plaintiff's arrest. Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

68. Defendants were at all times agents, servants, and employees acting within the scope of their employment by the City of New York, and the DOC, which are therefore responsible for their conduct.

69. Defendant City, as employer of each of the Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

1. Compensatory damages in an amount to be determined at trial for the physical and psychological injuries sustained by Mr. Boothby as a result of the events alleged herein.

2. Punitive damages against the Individual Correction Officer Defendants in an amount to be determined at trial.

3. For pre-judgment interest as allowed by law.

4. An order awarding plaintiff reasonable attorneys' fees, together with the costs of this action.

5. Such other further relief as the Court may deem appropriate.

Dated: March 2, 2016
       New York, New York

ROMANO & KUAN, PLLC

Julia P. Kuan (JK 3822)
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5075
julia.kuan@romanoandkuan.com

*Attorneys for Plaintiff*